CABRINI DEVELOPMENT COUNCIL, CDC Operations, Inc., and Excimer Associates, LLC., Plaintiffs,

v.

LCA–VISION, INC., Stephen N. Joffe, Larry P. Rapp, Gregory A. Livingston, Judith A. Crist, Sandra Joffe, Craig Joffe, and John Hassan, Defendants.

LCA–Vision, Inc., Plaintiff,

v.

New York Refractive Eye Associates, P.C., Defendant.

Nos. 97 Civ. 8671 DC, 98 Civ. 8387 DC.

United States District Court, S.D. New York.

Sept. 28, 2000.

---

Dreier & Baritz LLP, by Marc S. Dreier, Joel A. Chernov, New York City, for plaintiffs Cabrini Development Council, CDC Operations, Inc., and Excimer Associates, LLC and defendant New York Refractive Eye Associates, P.C.

Gerstein & Churchill, P.C., by Robert S. Churchill, Brendan R. Marx, New York City, and McLaughlin & Stern, LLP, by Robert S. Churchill, Brendan R. Marx, New York City, for defendant/plaintiff LCA–Vision, Inc., and the Individual defendants.

## *OPINION*

CHIN, District Judge.

In 1995, CDC Operations, Inc. ("CDCO"), New York Refractive Eye Associates, P.C. (the "P.C."), and LCA–Vision, Inc. ("LCA") formed Excimer Associates, LLC, a New York limited liability company, for the purpose of opening a New York City center offering photorefractive keratectomy ("PRK"), a laser eye procedure to correct myopia. The joint venture failed, and these consolidated diversity actions—together alleging sixteen causes of action—are the result.

Presently before the Court are the parties' cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56.[1] In the course of

---

1. Plaintiffs in the first action and defendant in the second move in the alternative for judgment

considering the motions the Court realized that it does not have subject matter jurisdiction over the first action, docket number 97 Civ. 8671, because complete diversity of citizenship between the parties does not exist. Accordingly the first action is remanded to the New York Supreme Court pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction. With respect to the second action, docket number 98 Civ. 8387, the P.C.'s motion is granted only to the extent that I hold LCA lacks standing to assert Excimer's claim. Because Excimer is an indispensable party to the action whose joinder would destroy diversity jurisdiction, the second action is dismissed without prejudice and without costs.

## BACKGROUND

### A. *Facts*

In late 1994, LCA approached non-party Cabrini Medical Center (the "Hospital"), its affiliate Cabrini Development Council ("Cabrini"), and certain ophthalmologists about developing a New York City center offering PRK services. To further their plan, LCA and the Hospital entered into a Development Agreement dated March 6, 1995. (Cabrini Am.Compl., Ex. A). Because the Hospital is a not-for-profit corporation whose activities are limited by statute, the Development Agreement contemplated the creation of a new for-profit entity—CDCO—that would assume the Hospital's rights and obligations under the Development Agreement and would take part in the PRK venture. (*Id.*). CDCO, LCA, and the P.C. then created Excimer and entered into an Operating Agreement. (Cabrini Am.Compl.Ex. B).

The Operating Agreement required CDCO, LCA, and the P.C. to make initial capital contributions to Excimer. Both CDCO and LCA made their initial contributions in accordance with the Operating Agreement. (LCA 56.1 ¶ 3). LCA alleges that the P.C. failed to make its required capital contribution. (LCA 56.1 ¶ 3). LCA further alleges that it made substantial additional contributions to Excimer that CDCO failed to match. (LCA 56.1 ¶ 4). CDCO

denies that the capital contributions were unequal. (CDCO/Excimer 56.1 Opp. ¶ 4).

In late 1995 or early 1996, Excimer began operating a single, unprofitable PRK center in Manhattan. (LCA 56.1 ¶ 7; CDCO/Excimer 56.1 Opp. ¶ 7). Soon thereafter, Excimer entered into negotiations to acquire an additional PRK center located in Mt. Kisco, New York. (LCA 56.1 ¶ 8; CDCO/Excimer 56.1 Opp. ¶ 8). According to CDCO and Excimer, Excimer agreed to acquire the Mt. Kisco Center. Before it could do so, however, LCA acquired the center for itself, thereby usurping a corporate opportunity that rightly belonged to Excimer. (CDCO/Excimer 56.1 Opp. ¶ 8).

Apparently disenchanted with the joint venture, CDCO offered to sell its interest in Excimer to LCA in February 1997. (LCA 56.1 ¶ 13; CDCO/Excimer 56.1 Opp. ¶ 13). The parties initially thought that under the terms of the Operating Agreement, CDCO was not allowed to sell its interest in Excimer without the written consent of all members. Accordingly, CDCO and LCA sought, but were unable to obtain, the P.C.'s consent to complete the sale. (LCA 56.1 ¶¶ 15–16; CDCO/Excimer 56.1 Opp. ¶¶ 15–16). The parties dispute whether the sales agreement between LCA and CDCO was binding, in view of the P.C.'s refusal to agree to the sale. Excimer ceased operating in September 1997 when LCA removed the laser and computer from Excimer's Manhattan PRK center. (CDCO/Excimer 56.1 ¶ 29; LCA Answer ¶ 35).

### B. *The Instant Disputes*

The complaint in the first action asserts: (1) a claim for breach of contract by CDCO against LCA; (2) claims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment by Excimer against LCA; (3) a claim for conversion and theft of a corporate opportunity by Excimer against LCA and its officers or directors (collectively, the "Individual defendants"); and (4) a claim for fraud by Cabrini against LCA and the Individual defendants. In response, LCA asserts counterclaims for breach of contract, promissory estoppel, breach of fiduciary duty and the duty of good

on the pleadings pursuant to Fed.R.Civ.P. 12(c).

faith and fair dealing, and prima facie tort against Cabrini and CDCO, and breach of contract and indemnification against Excimer. The parties have cross-moved for summary judgment on all claims except LCA's counterclaim for indemnification.[2]

In the second action, LCA alleges claims for breach of contract and promissory estoppel against the P.C. The P.C. filed counterclaims for breach of contract against LCA and for indemnification against Excimer, which is not a party in the second action. The parties cross-move for summary judgment on all claims.

## C. Prior Proceedings

The first action, docket number 97 Civ. 8671, was originally filed in the Supreme Court of the State of New York on October 16, 1997 by plaintiffs Cabrini and CDCO, suing individually and derivatively on behalf of and for the benefit of Excimer, a limited liability company, against LCA, the Individual defendants, and Excimer. On November 21, 1997 defendants removed the action to this Court on the basis of diversity of citizenship, 28 U.S.C. § 1332, alleging that complete diversity existed between plaintiffs and defendants and that the amount in controversy exceeded $50,000.[3]

On January 12, 1998, LCA, the Individual defendants, and Excimer moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). On November 3, 1998, I denied the motion as moot and granted Cabrini and CDCO leave to file an amended complaint. The amended complaint asserted claims on behalf of Excimer directly, rather than derivatively, and dropped Excimer as a defendant. These motions followed.

## DISCUSSION

### A. The First Action

#### 1. Subject Matter Jurisdiction

In the course of considering the summary judgment motions, the Court *sua sponte* raised the issue of subject matter jurisdiction and permitted the parties an opportunity to be heard. *See* Order dated August 14, 2000; *see also Franceskin v. Credit Suisse*, 214 F.3d 253, 257 (2d Cir.2000) (court may address subject matter jurisdiction *sua sponte* at any stage of the proceeding); *Rohrer v. FSI Futures, Inc.*, 981 F.Supp. 270, 276 (S.D.N.Y.1997) (same).

#### a. The Amended Complaint

■ As the first action is currently captioned, one of the named plaintiffs is Excimer, a New York limited liability company. For purposes of diversity jurisdiction, a limited liability company has the citizenship of each of its members. *See Handelsman v. Bedford Village Assocs. Ltd. Partnership*, 213 F.3d 48, 51–52 (2d Cir.2000); *Keith v. Black Diamond Advisors, Inc.*, 48 F.Supp.2d 326, 330 (S.D.N.Y.1999); *U.S.A. Seafood, LLC v. Koo*, No. 97 CV 1687, 1998 WL 765160, at *1 (N.D.N.Y. Oct.30, 1998); *Inarco Int'l Bank N.V. v. Lazard Freres & Co.*, No. 97 Civ. 0378, 1998 WL 427618, at *2 (S.D.N.Y. July 29, 1998). One of the defendants in the first action, LCA, is a Delaware corporation with its principal place of business in Ohio and a member of Excimer. (LCA Compl. ¶ 1). Because Excimer shares citizenship with its member, LCA, complete diversity, and therefore jurisdiction, is lacking.

Nevertheless, defendants contend that the Court should look to whether diversity of citizenship was complete at the time the action was filed in state court and at the time it was removed to federal court, regardless of the current alignment of the parties. *Cf. United Food & Commercial Workers Union, Local 919, AFL—CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir.1994) (when basis of removal is diver-

2. In its answer, LCA purported to allege counterclaims against the Hospital. As the Hospital is not a party to either action, LCA has consented to dismiss those claims. (LCA 56.1 Opp. p. 2 n. 1). LCA also agreed to withdraw its claim for breach of fiduciary duty and the duty of good faith and fair dealing in the second action. (*Id.*).

3. Congress increased the amount-in-controversy requirement to $75,000, effective 90 days after October 19, 1996. *See* Federal Courts Improvement Act of 1996, Pub.L. No. 104–317, Title II, § 205, 110 Stat. 3847. Defendants' error does not defeat diversity, however, because plaintiffs' complaint clearly sought in excess of $75,000.

sity, complete diversity must exist both at time action is filed in state court and time of removal) (citing 14A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3723, at 311–12 (1990)). Defendants cite *Freeport–McMoRan, Inc. v. KN Energy, Inc.*, 498 U.S. 426, 428, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991), for the proposition that if diversity was proper at the time of removal, a subsequent amendment of the complaint to include a non-diverse plaintiff does not defeat diversity jurisdiction. Many courts examining the issue have held that *Freeport–McMoRan* is limited to instances in which a non-diverse party is substituted pursuant to Fed.R.Civ.P. 25, rather than added pursuant to Fed.R.Civ.P. 15. *See Alvarez v. Donaldson Co.*, 213 F.3d 993, 995 (7th Cir. 2000) (citing cases). I need not decide whether *Freeport–McMoRan* is applicable here, however, because complete diversity of citizenship was also lacking at the time the case was removed to this Court.

### b. *The Original Complaint*

At the time defendants removed the first action to this Court, CDCO, a member of Excimer, was a named plaintiff and Excimer was a named defendant. In addition, claims were brought on behalf of Excimer against its member, LCA. Accordingly, the original complaint suffered from the same defect in diversity jurisdiction as the amended complaint.[4] *See Handelsman*, 213 F.3d at 51–52. Despite this defect in jurisdiction, defendants—who have the burden of proving subject matter jurisdiction—contend that complete diversity existed because plaintiffs "fraudulently joined" Excimer as a party. *See United Food*, 30 F.3d at 301 ("defendant has the burden of establishing that removal is proper"). Under defendants' theory, Excimer's presence in the suit must be disregarded because plaintiffs' claims were solely derivative in nature and, as a matter of law, a derivative action may not be

brought on behalf of a New York limited liability company. (Affidavit of Robert S. Churchill, dated November 21, 1997, p. 3; Defendants' Memorandum of Law in Support of Removal ("Def. Removal Mem.") pp. 2–4).

To prove fraudulent joinder, defendants must show that under the controlling substantive law the facts as stated in plaintiffs' complaint form no basis for granting them the relief they seek. *See Wise v. Lincoln Logs, Ltd.*, 889 F.Supp. 549, 552 (D.Conn.1995) ("the stringent test for fraudulent joinder requires that if there is any reasonable basis for predicting that the controlling substantive law might grant the plaintiff the relief he seeks against the non-diverse defendant, the court will not disregard him as a nominal defendant and the case must be remanded") (internal quotations and citation omitted); *see also Garcia v. Tetra Laval Convenience Foods, Inc.*, No. 97 Civ. 9035, 2000 WL 278084, at *1 (S.D.N.Y. Mar.14, 2000). In determining whether joinder is fraudulent, "the court must resolve all questions of fact and controlling law in favor of the plaintiff." *Wise*, 889 F.Supp. at 552.

At the time defendants removed the first action, there was no case law directly on point. Instead, defendants relied upon treatises and the legislative history of New York's Limited Liability Company Law ("NYLCLL") to support their argument that members of a limited liability company could not bring a derivative suit on its behalf. (Def. Removal Mem. p. 3). This absence of law is itself sufficient to defeat defendants' argument that plaintiffs had no reasonable basis for recovery, particularly when, as here, I am compelled to draw all inferences in plaintiffs' favor. Moreover, a recent decision has held that members of a New York limited liability company can bring a derivative suit on behalf of the company under

4. Even if defendants believed that under the state of the law at the time of removal Excimer's citizenship was to be determined as if it were a corporation, the removal petition was still defective as both CDCO and Excimer were citizens of New York (and thus complete diversity was lacking). Of course, Excimer's New York citizenship rendered removal improper for the wholly inde-

pendent reason that a diversity action is not removable if one of the defendants is a citizen of the state in which the action is brought. *See* 28 U.S.C. § 1441(b). This defect is not jurisdictional, however, and plaintiffs forfeited the right to object by failing to raise the objection within thirty days of removal. *See Handelsman*, 213 F.3d at 50 n. 2 (citing 28 U.S.C. § 1447(c)).

common law, and the decision confirms that plaintiffs were not unreasonable in predicting that New York substantive law might grant them the relief they sought. *See Weber v. King,* 110 F.Supp.2d 124, 130–32 (E.D.N.Y. 2000). Accordingly, defendants' claim of fraudulent joinder is rejected. Excimer was properly a party to the action (either as a plaintiff or as a defendant) and removal jurisdiction was lacking.

### 2. *Rule 21 Dismissal*

Defendants next argue that in the event I conclude subject matter jurisdiction is lacking, I should salvage jurisdiction over the first action by dropping Excimer pursuant to Fed.R.Civ.P. 21. Not surprisingly, plaintiffs do not consent to Excimer's dismissal. "It is well-settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time" in a litigation. *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 832, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989). "A court's discretion to dismiss a party pursuant to Rule 21 is circumscribed only by the 'equity and good conscience test' of Fed.R.Civ.P. 19(b)." *Kunica v. St. Jean Fin., Inc.,* 63 F.Supp.2d 342, 350 (S.D.N.Y.1999). I must therefore decide as an initial matter whether Excimer is an indispensable party to the action under Rule 19. *See Jaser v. New York Property Ins. Underwriting Ass'n,* 815 F.2d 240, 243 (2d Cir.1987) (district court must consider whether non-diverse party is indispensable prior to dismissal); *see also E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.,* 160 F.3d 925, 938 n. 27 (2d Cir.1998) (Rule 19 rather than state law governs decision whether a federal court may proceed without a party).

To determine whether Excimer is an indispensable party under Rule 19, I must perform a two-step analysis. First, I must determine whether Excimer is a necessary party under Fed.R.Civ.P. 19(a). *See Weber,* 110 F.Supp.2d at 127–28. Pursuant to Rule 19(a), joinder of a party is necessary if:

(1) in the person's absence complete relief cannot be accorded among those already parties, or

(2) the person claims an interest relating to the subject matter of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest.

Fed.R.Civ.P. 19(a).

■ Excimer is a necessary party to the first action because it has a clear interest in the action and is so situated that disposition of the case in its absence may impair or impede its ability to protect that interest. First, Excimer, as a limited liability company, is a separate legal entity with separate rights and obligations from its members; the presence of two of its three members in this action—asserting claims against each other— is insufficient to protect its interests. *See Weber,* 110 F.Supp.2d at 127–28 (citing NYLLCL § 203(d) (McKinney 2000)). Second, Excimer has asserted claims for theft of a corporate opportunity and conversion of its property; these claims are unique to Excimer and cannot be asserted by its members in their individual capacities. Accordingly, Excimer is a necessary party under Rule 19(a). Because Excimer's presence in the action destroys diversity, I now address whether Excimer is an indispensable party under Rule 19(b).

To determine whether Excimer is an indispensable party, the Court must consider the following factors: (1) the extent to which a judgment rendered in Excimer's absence might be prejudicial to it or to those already parties; (2) the extent to which I can shape relief to lessen or avoid the prejudice; (3) whether a judgment rendered in Excimer's absence will be adequate; and (4) whether the parties will have an adequate remedy if the action is dismissed. *See* Fed.R.Civ.P. 19(b); *Jaser v. New York Property Insurance Underwriting Assn.,* 815 F.2d 240, 243; *Provident Tradesmens Bank Trust Co. v. Patterson,* 390 U.S. 102, 109–11, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

Applying these factors, it is clear that Excimer is an indispensable party to the first action. First, here, as in *Weber*, it is the protection of Excimer's interests that lies at the core of the action. Four of the six claims in plaintiffs' amended complaint are asserted by Excimer alone and involve alleged harm to Excimer, as distinct from its members. Because none of the other parties before the Court can adequately represent Excimer's interests, Excimer would be prejudiced if this action went forward without its joinder. *See Weber*, 110 F.Supp.2d at 129–30.

Second, it makes little sense to litigate the rights and liabilities of the members of Excimer separate and apart from those of Excimer itself, particularly where, as here, the claims are so intertwined. If Excimer were dropped from this action, Excimer and LCA would undoubtedly bring their claims against each other in state court, thus raising the possibility that the parties would be subject to multiple and potentially inconsistent verdicts. For example, LCA has asserted a counterclaim against both Cabrini and Excimer for breach of the Development Agreement. If Excimer were dismissed from the action, both this Court and the state court would be called upon to interpret the same agreement, with potentially inconsistent results.

Third, some of the counterclaims LCA has asserted against CDCO and Cabrini on their face appear to be more properly asserted as derivative claims on behalf of Excimer. For example, LCA asserts claims against Cabrini and CDCO for breach of fiduciary duty and the duty of good faith and fair dealing based on Cabrini and CDCO's alleged failure "to fulfill their duty to Excimer and their good faith obligations under the Operating Agreement to pursue the best interests of Excimer," resulting in loss of a business opportunity to Excimer. (LCA Answer and Counterclaim p. 11). As pleaded, those claims belong to Excimer, not LCA. Excimer should be permitted to litigate all of its claims—whether brought directly or derivatively—in one forum. More importantly, to the extent that such claims are properly characterized as derivative, LCA cannot proceed without Excimer. *See Ross v. Bern-*

*hard*, 396 U.S. 531, 538, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970) (entity on whose behalf a derivative suit is brought is necessary party without which case cannot proceed); *Weber*, 110 F.Supp.2d at 132–33 (when member asserts derivative claims on its behalf, limited liability company is indispensable party) (citing cases).

Finally, no party will be prejudiced by remanding this case to state court. Indeed, the state court is the only forum in which complete and adequate relief may be afforded to all parties in one setting. Accordingly, I hold that Excimer is an indispensable party to the first action such that in equity and good conscience I cannot resolve the claims without its joinder. Moreover, even assuming that Excimer were a dispensable party such that dismissal under Rule 21 were within my discretion, for the reasons set forth above, I would decline to drop Excimer solely to preserve jurisdiction. *See Allendale Mut. Ins. Co. v. Excess Ins. Co. Ltd.*, 62 F.Supp.2d 1116, 1122 (S.D.N.Y.1999) (before dropping a non-diverse party, Court must ensure that no prejudice is created).

As I am without jurisdiction over the first action, 97 Civ. 8671, the case is hereby remanded to the Supreme Court of the State of New York, New York County. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

### B. *The Second Action*

■ By order dated November 3, 1998, I consolidated the second action, docket number 98 Civ. 8387, with the first action, docket number 97 Civ. 8671. Consolidation of cases pursuant to Fed.R.Civ.P. 42(a) "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Cella v. Togum Constructeur Ensembleier en Industrie Alimentaire*, 173 F.3d 909, 912 (3d Cir.1999) (quoting *Johnson v. Manhattan R. Co.*, 289 U.S. 479, 496–97, 53 S.Ct. 721, 77 L.Ed. 1331 (1933)). Accordingly, remand of the first action does not affect the second. *See id.* at 912–13 (error to dismiss action over which diversity jurisdiction existed be-

cause consolidated with action over which diversity jurisdiction was lacking; jurisdictional basis for each action must be analyzed independently).

### 1. *Direct v. Derivative Claims*

 In the second action, docket number 98 Civ. 8387, LCA has asserted claims against the P.C. for (1) breach of the Operating Agreement based on the P.C.'s alleged failure to make capital and additional contributions to Excimer and (2) for promissory estoppel based upon the P.C.'s alleged promise to make such contributions.[5] The P.C. alleges that LCA lacks standing to assert these claims because, to the extent they exist, the claims belong to Excimer, not LCA. I agree.

 Although LCA has pleaded its claims directly, "in determining whether a claim is derivative or direct, the court must look to the nature of the wrongs alleged in the body of plaintiff's complaint, and is not limited by plaintiff's characterization or stated intention." *Lenz v. Associated Inns & Restaurants Co. of Am.*, 833 F.Supp. 362, 379 (S.D.N.Y.1993); *see ABF Capital Management v. Askin Capital Management, L.P.*, 957 F.Supp. 1308, 1329 (S.D.N.Y.1997). "In both the corporate and partnership context, the determination of whether a suit is derivative or direct turns on the nature of the injury alleged and the entity which sustains the harm." *Lenz*, 833 F.Supp. at 379. Thus, the question of whether LCA's claims must be brought derivatively on behalf of Excimer, or whether they may be brought individually by LCA, turns on whether the primary injury alleged in the complaint is to Excimer or to LCA itself. *See Weber*, 110 F.Supp.2d at 132–33 ("If the injury does not exist independently of the business entity, but rather is more accurately characterized as harm to the entity itself, and is similar to that suffered by other shareholders, then the action is derivative.... If the wrong involves a contractual right of a shareholder which exists independent of any right of the corporation, such as the right to vote, then it is more aptly characterized as direct."); *Lenz*, 833 F.Supp. at

379 ("[f]or a plaintiff to bring an individual action, he must be injured directly. or independently of the corporation."); *Sussman v. Paradigm Partners, Inc.*, 91 Civ. 2892, 1992 WL 321783, at *7 (S.D.N.Y. Oct.26, 1992) (distinction between derivative and direct claims turns on whether "primary injury alleged in the complaint is to the partnership or to the individual plaintiffs").

In its complaint, LCA does not seek to recover the additional contributions it claims it made to Excimer due to the P.C.'s alleged breach of its agreement to make capital and other contributions. Rather, LCA seeks to recover the money it claims the P.C. failed to contribute to Excimer. (LCA Compl. pp. 2–4; LCA Opp.Mem. p. 15). The injury for which LCA seeks recompense is neither direct nor independent of Excimer. To the extent LCA itself has been injured at all, the injury flows from LCA's status as a member of Excimer is shared by the other members of Excimer, in particular CDCO. Accordingly, if the P.C.'s alleged failure to make capital contributions injured anyone, it is Excimer, and LCA should have brought a derivative rather than direct suit against the P.C. *See Alpert v. Haimes*, 64 Misc.2d 608, 611, 315 N.Y.S.2d 332, 336 (1970) (allegation that limited partner failed to make capital contributions under terms of the partnership agreement is derivative claim belonging to partnership).

### 2. *Joinder of Excimer*

 Unfortunately, LCA's pleading error cannot be remedied simply by permitting it to amend its complaint pursuant to Fed. R.Civ.P. 15 to allege derivative, rather than direct, claims. As noted above, in both the corporate and partnership contexts, "the entity on whose behalf a derivative lawsuit is brought is deemed an indispensable party." *Weber*, 110 F.Supp.2d at 132–33 (citing cases). The addition of Excimer to the action is not feasible, however, as its joinder would destroy the Court's diversity jurisdiction. *See Handelsman*, 213 F.3d at 51–52. Accordingly, the action must be dismissed pursuant to Fed.R.Civ.P. 19(b).

---

5. As noted above, LCA agreed to voluntarily dismiss its third claim for breach of fiduciary duty

and the implied covenant of good faith and fair dealing. (LCA 56.1 Opp. p. 2 n. 1).

Even if LCA's claims were not properly characterized as derivative, *e.g.* if *Weber* were wrongly decided and the law is that a member of a limited liability company cannot bring a derivative suit on behalf of the company, Excimer would still be an indispensable party to the action under Rule 19. Excimer has an interest in recovering the sums owed it by the P.C. The parties present in the action cannot adequately protect Excimer's interest and a judgment rendered in LCA's favor would be prejudicial both to Excimer, and to non-party CDCO. In addition, if Excimer is not joined in this action, the P.C. is at risk of incurring double or multiple judgments; for example, Excimer and CDCO could bring suit against the P.C. in state court seeking recovery for the same allegedly unpaid sums LCA seeks to recover here. Finally, LCA has an adequate remedy in state court; it may file its own action, or, if barred, it may join the first action which has now been remanded. Accordingly, because Excimer is an indispensable party to the second action whose joinder is not feasible, the second action must be dismissed pursuant to Fed.R.Civ.P. 19(b). The dismissal is without prejudice to the parties pursuing their claims in state court.

I note that this outcome—which permits the parties to join Excimer as a party and litigate their claims in state court—is made all the more compelling by the fact that (1) the P.C.'s purported "counterclaim" for indemnification against Excimer (currently a non-party to the action) may now be heard; and (2) the claims in the consolidated actions may now be litigated together, as they should be.

### CONCLUSION

With respect to the first action, docket number 97 Civ. 8761, the cross-motions are denied as moot. The case is remanded to the Supreme Court of the State of New York, New York County pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction. With respect to the second action, docket number 98 Civ. 8387, the P.C.'s motion is granted only to the extent that I hold that LCA lacked standing to assert Excimer's claims. Because Excimer is an indis-

pensable party to the action whose joinder would destroy diversity jurisdiction, the second action is dismissed without prejudice pursuant to Fed.R.Civ.P. 19(b), and the parties may pursue their claims in state court. No costs are awarded.

SO ORDERED.