**EXCIMER ASSOCIATES, INC.,**
**Plaintiff–Appellee,**

**Cabrini Development Council, Suing individually and derivatively on behalf of and for the benefit of Excimer Associates, L.L.C., a New York Limited Liability Company, CDC Operations, Inc., Suing individually and derivatively on behalf of and for the benefit of Excimer Associates, L.L.C., a New York Limited Liability Company, Plaintiffs–Counter–Defendants–Appellees,**

v.

**LCA VISION, INC., Defendant–Counter–Claim–Plaintiff–Appellant,**

**Stephen N. Joffe, Larry Rapp, Gregory Livingston, Judith Crist, Sandra Joffe, Craig Joffe & John Hassan, Defendants–Counter–Claimants–Appellants,**

**New York Refractive Eye Association, P.C., Defendant–Counter–Claimant–Appellee.**

Docket No. 00–9390.

United States Court of Appeals,
Second Circuit.

Argued May 1, 2002.

Decided May 31, 2002.

Robert S. Churchill, McLaughlin & Stern, LLP, New York, N.Y. (Brendan R. Marx, of counsel), for Appellants.

Joel A. Chernov, Dreier & Baritz LLP, New York, NY, for Appellees.

Before MINER and SACK, Circuit Judges, and BERMAN, District Judge.*

* The Honorable Richard M. Berman, of the United States District Court for the Southern District of New York, sitting by designation.

PER CURIAM.

Appellants LCA Vision, Inc. and its officers and directors, Stephen N. Joffe, Larry Rapp, Gregory Livingston, Judith Crist, Sandra Joffe, Craig Joffe, and John Hassan, appeal from a judgment entered in the United States District Court for the Southern District of New York (Chin, *J.*), remanding to the state court from which it was removed the first of two consolidated actions, the court having determined that it lacked subject matter jurisdiction over the action because there was not complete diversity among the parties, and dismissing the second action, the court having determined that LCA Vision, Inc. lacks standing to assert the claims it pleads in that action.

## BACKGROUND

In late 1994, discussions began between appellant LCA Vision, Inc. ("LCA"), nonparty Cabrini Medical Center (the "Hospital"), the Hospital's affiliate Cabrini Development Council ("Cabrini"), and various ophthalmologists regarding the establishment of a New York City center offering a laser procedure to correct myopia. On March 6, 1995, LCA and the Hospital entered into a Development Agreement that contemplated the creation of a for-profit entity, appellee CDC Operations, Inc. ("CDCO"), which would assume the Hospital's rights and obligations under the Development Agreement and would take part in the venture. CDCO, LCA, and appellee New York Refractive Eye Associates, P.C. ("PC") then created Excimer, a limited liability company, and entered into an Operating Agreement to govern Excimer's operations.

Pursuant to the Operating Agreement, the percentage interests in Excimer were 40% for CDCO, 40% for LCA, and 20% for PC. These interest ratios also represented the percentage of initial and subsequent capital contributions each entity was required to make. Both CDCO and LCA made their initial contributions in accordance with the Operating Agreement. LCA alleges in its complaint that PC failed to make its required capital contribution. LCA also alleges that it made substantial additional contributions to Excimer that CDCO failed to match. CDCO denies that the capital contributions were unequal.

In late 1995 or early 1996, Excimer began operating a single, unprofitable center in Manhattan. Soon thereafter, Excimer entered into negotiations to acquire another center offering the same laser procedure in Mt. Kisco, New York. According to CDCO and Excimer, Excimer agreed to acquire the Mt. Kisco Center. Before it could do so, however, LCA acquired the center for itself, thereby usurping a corporate opportunity that rightly belonged to Excimer.

In February 1997, CDCO offered to sell its interest in Excimer to LCA. The parties sought PC's consent to the sale, believing that the Operating Agreement required that the sale be consented to in writing by all of Excimer's members. CDCO and LCA were unable to obtain PC's consent. The parties dispute whether a sales agreement between LCA and CDCO would be binding, in view of PC's refusal to agree to the sale. Excimer ceased operating in September 1997.

The first action originally was filed in the Supreme Court of the State of New York on October 16, 1997, by Cabrini and CDCO, suing individually and derivatively on behalf of and for the benefit of Excimer against LCA, and its officers and directors (the Individual Defendants), and Excimer. The complaint in the first action asserts: (1) a claim for breach of contract by CDCO against LCA; (2) claims for breach of contract, breach of the covenant of good faith

and fair dealing, and unjust enrichment by Excimer against LCA; (3) a claim by Excimer against LCA and the Individual Defendants for conversion and theft of a corporate opportunity; and (4) a claim for fraud against LCA and the Individual Defendants by Cabrini. In response, LCA asserts counterclaims for breach of contract, promissory estoppel, breach of fiduciary duty and the duty of good faith and fair dealing, and prima facie tort against Cabrini and CDCO, and breach of contract and indemnification against Excimer.

On November 21, 1997, the defendants removed the action to the district court on the basis of diversity of citizenship, alleging that complete diversity existed between plaintiffs and defendants and that the amount in controversy requirement was satisfied.

On January 12, 1998, LCA, the Individual Defendants, and Excimer moved to dismiss the complaint pursuant to ·Federal Rule of Civil Procedure 12(b)(6). On March 3, 1998, Cabrini and CDCO moved for leave to file an amended complaint. On November 3, 1998, the district court granted the motion to amend and denied the motion to dismiss as moot. The amended complaint asserted claims on behalf of Excimer directly, rather than derivatively, and dropped Excimer as a defendant. The parties cross-moved for summary judgment on all claims except LCA's counterclaim for indemnification.

The second action was a suit brought by LCA against PC in the same federal district court. In a complaint dated November 23, 1998, LCA pleaded claims against PC for breach of contract, promissory estoppel, and breach of fiduciary duty and implied covenant of good faith.[1] PC filed counterclaims for breach of contract

against LCA and for indemnification against Excimer, which is not a party in the second action. Both parties moved for summary judgment on all claims. On March 25, 1999, the district court consolidated the two actions.

In an order dated August 14, 2000, the district court *sua sponte* raised the issue of its subject matter jurisdiction by questioning the complete diversity of the parties in the first action. The court noted that "[f]or the purposes of diversity jurisdiction, a limited liability company has the citizenship of each of its members." Because Excimer is a plaintiff in the first action and LCA, one of its members, is a defendant in that action, the district court stated that "it appears that Excimer and LCA have the same citizenship and complete diversity is lacking." Accordingly, the district court ordered the parties to submit by August 21, 2000, letter briefs "addressed solely to the issue of whether the complaint in the first action must be dismissed ... for lack of subject matter jurisdiction."

On September 28, 2000, the district court ruled on the cross-motions for summary judgment made in each of the two actions. The court remanded the first action to the state court for lack of subject matter jurisdiction, finding Excimer, a nondiverse party, to be necessary and indispensable to that action. *Cabrini Dev. Council v. LCA Vision, Inc.,* 197 F.R.D. 90, 96 (S.D.N.Y.2000). The court dismissed the second action on the ground that LCA's claims against PC could only be asserted derivatively on behalf of Excimer rather than directly and that therefore LCA lacked standing to bring those claims. The court determined that this

---

1. LCA subsequently agreed to the dismissal of its claim of breach of fiduciary duty and im- plied covenant of good faith.

deficiency could not be rectified by joining Excimer, since such joinder would defeat the court's diversity jurisdiction. *Id.* at 96–98.

This timely appeal by LCA and the Individual Defendants followed.[2]

## *DISCUSSION*

I. *Appellate Jurisdiction to Review Remand of First Action*

The threshold question raised on this appeal concerns our appellate jurisdiction to review the district court's order remanding the first action to the state court because of the district court's determination that there was a lack of complete diversity, and thus, that it lacked subject matter jurisdiction over the action. For the reasons discussed below, we dismiss the appeal in the first action for lack of appellate jurisdiction.

■ Our review of the district court's remand is circumscribed by 28 U.S.C. § 1447(d), which provides, in pertinent part: "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise...." *Id.* As the Supreme Court has instructed, this provision "must be read *in pari materia* with § 1447(c), so that only remands based on grounds specified in § 1447(c) are immune from review under § 1447(d)." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 711–12, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 127, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995)). The two categories of remand orders described in § 1447(c) are those based on lack of subject matter jurisdiction or on defects in the removal procedure. Therefore, the district court's remand for lack of diversity fits squarely within § 1447(c).

■ LCA concedes that remand orders based on lack of subject matter jurisdiction are generally not reviewable. LCA claims, however, that "even a remand based on a lack of subject matter jurisdiction cannot be insulated from review where the finding of lack of subject matter jurisdiction is based on a separate finding which involves the merits of the action." The exercise of appellate jurisdiction in such cases is often referred to as permissible under the collateral order doctrine.

■ The collateral order doctrine allows an appellate court to hear an otherwise nonappealable judgment "if the order conclusively determine[s] the disputed question, resolve[s] an important issue completely separate from the merits of the action, and is effectively unreviewable on appeal from a final judgment." *Sierra Rutile Ltd. v. Katz,* 937 F.2d 743, 748 (2d Cir.1991) (internal quotation marks omitted). We have not found a single case in which this Court has invoked the collateral order doctrine to confer appellate jurisdiction where the district court's remand order was based on a determination that it lacked subject matter jurisdiction. *Cf. Munafo v. Metro. Transp. Auth.,* 285 F.3d 201, 210 (2d Cir.2002) (applying collateral order doctrine to denial of summary judgment motion based on qualified immunity); *Minot v. Eckardt–Minot,* 13 F.3d 590, 593 (2d Cir.1994) (applying collateral order doctrine where district court based order on abstention doctrine); *Travelers Ins. Co. v. Keeling,* 996 F.2d 1485, 1488 (2d Cir. 1993) (applying collateral order doctrine in part where district court determination regarding forum selection clause "conclusively determine[d] [a collateral] disputed question").

Here, the district court based its lack of subject matter jurisdiction determination

---

**2.** Hereinafter, LCA and the Individual Defen-    dants are referred to collectively as "LCA."

on its finding that Excimer, a party whose joinder would defeat complete diversity, was a necessary and indispensable party in the first action. *Cabrini,* 197 F.R.D. at 94–95. This determination does not come within the collateral order doctrine because it does not "conclusively determine the disputed question." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). In other words, the district court's conclusion that Excimer was necessary to the action is not separate from the question of the district court's subject matter jurisdiction. The Third Circuit has articulated this distinction as follows:

> If the court looks to an issue *for the purpose of* determining subject matter jurisdiction, the issue is not separable because it cannot be said to have preceded the remand decision "in logic *and in fact.*" If, however, ... the issue has independent relevance in adjudging the rights of the parties (i.e., relevance beyond determining the existence of federal subject matter jurisdiction), the decision is separable ... even if it also happens to have an incidental effect on the court's jurisdiction.

*Powers v. Southland Corp.,* 4 F.3d 223, 228 (3d Cir.1993) (citing *City of Waco v. United States Fid. & Guar. Co.,* 293 U.S. 140, 143, 55 S.Ct. 6, 79 L.Ed. 244 (1934)). In the case before us, the district court's conclusion that Excimer is a necessary and indispensable party has no relevance independent of the court's determination that it lacked subject matter jurisdiction over the first action.

Moreover, " § 1447(d) prohibits review of all remand orders issued pursuant to § 1447(c) *whether erroneous or not.*" *Thermtron Prods. Inc. v. Hermansdorfer,* 423 U.S. 336, 343, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976) (emphasis added); *see also Gravitt v. Southwestern Bell Tel. Co.,* 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977). Accordingly, even if the district court erroneously found Excimer to be a necessary and indispensable party, we lack appellate jurisdiction to review its remand of the first action to the state court.

## II. *Standing of LCA in the Second Action*

▮ LCA next argues that the district court erred in concluding that LCA lacks standing to assert the claims it pleads in the second action. We review the district court's dismissal of the complaint for lack of standing *de novo,* construing all the allegations in the complaint in favor of LCA. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.").

▮ In the second action, LCA asserts claims against PC for (1) breach of the Operating Agreement based on PC's alleged failure to make capital and additional contributions to Excimer, and (2) promissory estoppel based upon PC's alleged promise to make such contributions. The district court held that LCA does not have standing to assert these claims because they do not represent a direct injury to LCA. Rather, the district court concluded, these claims properly belong to Excimer and thus can only be asserted by LCA in a derivative action on Excimer's behalf. *Cabrini,* 197 F.R.D. at 97. Because joinder of Excimer, a necessary and indispensable party, would defeat its diversity jurisdiction, the district court dismissed the second action. *Id.* at 98.

▮ We have stated that "the critical question posed by the direct injury test is whether the damages a plaintiff sustains

are derivative of an injury to a third party. If so, then the injury is indirect; if not, it is direct." *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 238–39 (2d Cir.1999). However, where the plaintiff's injury is direct, the fact that another party may also have been injured and could assert its own claim does not preclude the plaintiff from asserting its claim directly. In the corporate context, we have explained that "[u]nder New York law, a shareholder may bring an individual suit if the defendant has violated an independent duty to the shareholder, whether or not the corporation may also bring an action." *Ceribelli v. Elghanayan*, 990 F.2d 62, 63 (2d Cir.1993) (citation omitted).

The district court found LCA's injury to be indirect, or derivative, stating that "[i]n its complaint, LCA does not seek to recover the additional contributions it claims it made to Excimer due to the P.C.'s alleged breach of its agreement to make capital and other contributions. Rather, LCA seeks to recover the money it claims the P.C. failed to contribute to Excimer." *Cabrini*, 197 F.R.D. at 97. LCA's complaint, however, arguably supports the opposite conclusion.

In Count One, LCA explains that it contributed to Excimer $1,092,089.86 and that under the Operating Agreement, PC was required to pay half of what LCA paid. Thus, PC was obligated to pay $546.044.93, but it only paid $50,826, thereby leaving $495,218.93 unpaid. The last paragraph of Count One states that "[LCA] has been damaged by the refusal of [PC] to pay the amount demanded of it, *by having lost the additional amounts contributed by [LCA]* to Excimer." (emphasis added). Thus, the district court's statement that "LCA does not seek to recover the additional contributions it claims it made to Excimer" is questionable since, construing the complaint in LCA's favor, as we must, this may well be what LCA is arguing. In

other words, LCA appears to claim that, as a result of PC's breach of the Operating Agreement, LCA contributed $495,218.93 over and above that which it was contractually obligated to pay, and it is now seeking to recover that amount from PC. Such a claim would seek recovery for a direct injury to LCA that is independent of any injury Excimer may have suffered. However, LCA is not specific in alleging the nature of the "additional amounts" it allegedly contributed or in providing the factual predicate for its claim of a direct injury.

The long-settled rule of pleading instructs "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint in its current form does not sufficiently contain specific allegations of fact from which we can infer a cognizable claim of direct injury separate and distinct from the injuries allegedly suffered by Excimer. However, it cannot be said beyond doubt at this point that *no set of facts* can be proved by LCA to support a claim that it suffered a direct injury as a result of PC's breach of the Operating Agreement. Accordingly, we vacate the dismissal of the second action and remand the case to the district court to allow LCA an opportunity to amend its complaint to plead its claims of a direct injury with greater particularity.

## CONCLUSION

For the foregoing reasons, the appeal in the first action is dismissed and the judgment in the second action is vacated and remanded.