Kevin WEBER and Robert Weber, Plaintiffs,

v.

Kathleen KING, Robin King, Jessie Miller–Herschell, Kenneth Patrick and KBS Holding Company, Inc., Defendants.

No. 00–CV–2815(JM).

United States District Court, E.D. New York.

July 10, 2000.

---

Lazer, Aptheker, Feldman, Rosella & Yedid, P.C., Melville, New York City, by David Lazer, for Kathleen King and KBS Holding Company, Inc.

Schlam Stone & Dolan LLP, New York City, by Harvey M. Stone, Thomas Kissane, for Robin King, Jessie Miller–Herschell and Kenneth Patrick.

Benedict L. Sliney, Mineola, NY, for Kevin and Robert Weber.

Lloyd D. Feld, Armonk, NY, for Kevin and Robert Weber.

*Memorandum of Decision and Order*

MISHLER, District Judge.

This is, inter alia, a breach of contract action filed by two members of a limited liability company ("LLC") seeking money damages and an injunction preventing the third member of the LLC and her alleged supporters from destroying the LLC's business. At the center of the controversy is a bake shop founded by Defendant Kathleen King aptly named "Kathleen's Bake Shop" which all parties agree has acquired celebrity status in Southampton, N.Y. where King has been baking cookies and pies to critical acclaim for over 20 years. In 1998, King entered into an agreement with Plaintiff Robert Weber, who had been a long-time employee of Kathleen's Bake Shop, and his brother Kevin to form an LLC through which they would sell, among other products, King's famous chocolate chip cookies on the wholesale market along the Eastern seaboard. Sometime in late 1999, as the cookies continued to be baked fresh daily, the relationship between King and the Webers began to sour. First King filed an action in state court seeking to dissolve the LLC. The Webers, dissatisfied with the progress of the state court action, filed this

proceeding against King and three individuals the Webers allege have been picketing in front of the bake shop and destroying its business. The issue before us today is whether the LLC is an indispensable party to this proceeding such that we should dismiss the Webers' action for failure to name it as a party.

## RELEVANT BACKGROUND FACTS

King is the 100% owner of the company "KBS Holding Company, Inc." ("KBS"). In hopes of expanding her business to include regional distribution of her baked goods, on January 1, 1998, King sold two-thirds of her business to Plaintiffs Robert and Kevin Weber ("Plaintiffs" or "the Webers") for promissory notes valued at $433,333.33 each (the "Notes"). The vehicle through which the sale was accomplished was a limited liability company named "Kathleen's Bake Shop, LLC" (the "Company"), two-thirds of which was to be owned by the Webers and one-third by KBS.[1] The Company leased the premises of the Southampton store from King and paid her a salary as an officer of the Company. Plaintiffs have also opened a baking facility in Richmond, Virginia from which they produce most of the wholesale product. Plaintiffs recently terminated King's employment with the Company, but she retains her one-third ownership interest in the Company.

The parties dispute from which funds Plaintiffs were to make the monthly payments to KBS on their Notes. Plaintiffs claim that all parties agreed that the installment payments would be made from Company funds and charged as distributions to Plaintiffs' capital accounts in the Company. King, on the other hand, claims that Plaintiffs signed the Notes personally and were thus obligated to make regular payments on them regardless of whether Plaintiffs' share of Company profits for any given month were sufficient to cover their installment payments on the Notes.

In or around December 1999, King decided that she was no longer content with the manner in which Plaintiffs were running the Company. She began a campaign of protest which Plaintiffs describe as a "takeover scheme". According to Plaintiffs, "King's plan [was] to cause our promissory notes to KBS to be defaulted to enable her to reacquire our Units assigned as collateral security for the Notes. If successful, King [would] become the sole owner of the Company, and our interests [would] be extinguished." Affidavit of Kevin Weber dated May 17, 2000 (Weber Aff.) at ¶ 9.

On March 17, 2000, KBS filed a complaint in Supreme Court, Suffolk County against Kevin Weber, Robert Weber and the Company seeking money damages for breach of fiduciary duty, self-dealing and waste by the Webers, the dissolution of the Company and an accounting. See Ex. E to Weber Aff. On that same day, the Hon. Lester Gerard issued a temporary restraining order preventing the Webers from, *inter alia*, selling the Company or any of its assets in order to pay their installment payments on the Notes. The Webers then moved for permission to appeal and to vacate the TRO pending their application. The Appellate Division denied the Webers' motion.

On May 17, 2000, the Webers instituted the present action before this court against King, Robin King (King's sister-in-law), Jessie Miller–Herschell (a friend of King), Kenneth Patrick (a former employee of the Company) and KBS (collectively, "Defendants").[2] The Complaint alleges, *inter alia*, that King breached her contract with the Webers, breached her duty not to impair the value of the Webers' security on the Notes, committed acts of unfair competition, tortiously, maliciously and unlawful-

---

1. Plaintiffs' Notes were secured by their ownership interests in the Company.

2. Robin King, Jessie Miller–Herschell and Kenneth Patrick are hereinafter referred to as the "Additional Defendants".

ly interfered with the Webers' prospective business advantage and prospects and tortiously, maliciously and unlawfully interfered with the Webers' rights under their agreements with KBS. The Webers seek judgment:

- in their favor "in the amount of at least $1,066,666.66";
- enjoining King and her supporters from picketing or inducing others to boycott the Southampton store;
- enjoining King and her supporters from attempting to induce employees not to show up for work, not to use their best efforts for the Company or to quit;
- declaring the agreement providing that the Webers may pay their installment payments on the Notes from Company funds binding and enforceable;
- enjoining King from associating herself with any other bakery within 30 miles of the Southampton store;
- enjoining King from making any public statement concerning the business affairs of the Company or from making any disparaging statement concerning the Company;
- awarding the Webers exemplary damages against each of the defendants.

Defendants have moved to dismiss Plaintiffs' claims for failure to join a necessary and indispensable party pursuant to Fed.R.Civ.P. 12(b)(7). Defendants argue that Plaintiffs failed to join the Company "in order to create the false appearance of diversity jurisdiction." Additional Defendant's Memorandum of Law at 2. They urge that the LLC is a necessary and indispensable party whose joinder is not feasible because it would destroy diversity and deprive this court of subject matter jurisdiction under 28 U.S.C. § 1332. Therefore, Defendants conclude, this action should be dismissed pursuant to Fed. R.Civ.P. 12(b)(7).

Plaintiffs argue that their claims, while they may be brought on behalf of the Company, can also be "asserted by the plaintiffs individually." (Plaintiffs' Memorandum of Law at 8). The Company, therefore, is not a necessary party and, in turn, cannot be deemed an indispensable party. Id. at 7–11.

## DISCUSSION

■ In order to determine whether the Company is an indispensable party, we must perform a two-part inquiry under Fed.R.Civ.P. 19. We must first determine whether the Company is a necessary party under Fed.R.Civ.P. 19(a). *Associated Dry Goods Corp. v. Towers Financial Corp.*, 920 F.2d 1121, 1123 (2d Cir.1990) ("Unless Rule 19(a)'s threshold standard is met, the court need not consider whether dismissal under Rule 19(b) is warranted"). If the Company is a necessary party, but joinder is not feasible, we must proceed, under Fed.R.Civ.P. 19(b), to "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable."

Under Rule 19(a), joinder of a party is necessary if:

(1) in the person's absence complete relief cannot be accorded among those already parties, or

(2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest.

Fed.R.Civ.P. 19(a).

We conclude that the Company is a necessary party since it is an interested party in this action and is "so situated that the disposition of the action in the [Company's] absence may (i) as a practical matter im-

pair or impede [its] ability to protect that interest." Fed.R.Civ.P. 19(a). Plaintiffs cannot argue that the presence of all members of the Company before the Court is sufficient to protect the interests of the Company. Under New York's Limited Liability Company Law (N.Y.LLCL), an LLC is a "separate legal entity." NYLLCL § 203(d) (West 2000). Its members are afforded corporate-like limited liability protection, i.e., members do not have personal liability for the debts, obligation, or liabilities of the LLC.[3] In addition, like a corporation, it has rights and obligations which are separate and distinct from those of its members.[4] It follows that the Company's interests may also be distinct from those of its members.

For example, were the Company to be dissolved, creditors of the Company would hold an equitable interest in its assets that may compete with the interest held by Plaintiffs. Because the creditors' claims would not be able to reach the members personally, Plaintiffs cannot represent the interests of the Company in determining the validity of the creditors' claims.

In addition, one of the issues in this case is whether to permit Plaintiffs to invade the coffers of the Company to pay down their promissory notes to KBS. Plaintiffs demand relief in the form of a declaration by this court that "the agreement among the plaintiff and defendant KBS providing for the payment of the installments of the plaintiffs' notes to KBS from Company funds and charging the plaintiffs' capital accounts in the Company for the amount of such payments [is] valid, binding and enforceable." Compl. ¶ 37(d). As Plaintiffs

clearly stand to benefit personally from a decision granting such relief, they cannot objectively determine whether such depletion of the Company's assets are in the Company's best interest.

Finally, the fact that all members of the Company are before the Court is insufficient to assure adequate representation of the Company's interests where, as here, the members are in conflict. As one court noted,

> If each individual partner appears before the court to represent his or her individual partnership interest, and if those interests are in conflict, then in representing themselves the partners are no longer effecting an adequate representation of the totality of interests, and the partnership must be represented by licensed counsel . . .

*Knox Leasing v. Turner,* 132 N.H. 68, 562 A.2d 168, 172 (1989).

■ For these reasons, we find that the Company is a necessary party under Fed. R.Civ.P. 19(a). Given this finding, we must now determine whether joinder is feasible. This action is before the Court on diversity jurisdiction. Plaintiffs are citizens of Virginia, and all defendants, including KBS, are citizens of New York. The Company is a citizen of every state in which any of its members is a citizen. *See, e.g., U.S.A. Seafood, LLC v. Koo,* No. 97–CV–1687, 1998 WL 765160 (N.D.N.Y., Oct.30, 1998) (for purposes of diversity jurisdiction, a limited liability company has the citizenship of its membership) (collecting cases); *Cosgrove v. Bartolotta,* 150

---

**3.** There is no question that the members of the LLC here accepted the default provision of limited liability protection. See NYLLCL Practice Commentaries, 5(D). Section 5.4 of the Operating Agreement states that, "No Member shall have any personal liability for any obligation or act of the Company by virtue of being a Member." See also NYLLCL Practice Commentaries, 1(A) ("An LLC is defined as an unincorporated organization of one or more persons having limited liability for the contractual obligations and other liabilities of the business." *and* "The LLC com-

bines the corporate limitation on personal liability of the owners . . . with the partnership's operating flexibility . . ."); NYLLCL Practice Commentaries, 1(C) ("The LLC possesses the corporate trait of limited liability to its members . . .").

**4.** See NYLLCL § 601 ("A membership interest in the limited liability company is personal property. A member has no interest in specific property of the limited liability company.")

F.3d 729, 731 (7th Cir.1998) (same). The Company, therefore, is a citizen of both Virginia and New York, and joinder of the Company would defeat diversity. See 28 U.S.C. § 1332.

■ Given that the Company "cannot be made a party", Fed.R.Civ.P. 19(b), we must determine whether in equity and good conscience the action should proceed among the parties before [the Court] or should be dismissed. *Id.*; *see also, e.g., Viacom International, Inc. v. Kearney,* 212 F.3d 721 (2d Cir.2000) at *3.

Under Rule 19(b), the factors to be considered in determining whether a party is indispensable are:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b).

The Supreme Court in *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) restated the interests to be considered as follows:

> Rule 19(b) suggests four 'interests' that must be examined ... First, the plaintiff has an interest in having a forum. Before the trial, the strength of this interest obviously depends upon whether a satisfactory alternative forum exists ... Second, the respondent may properly wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another.... Third, there is the interest of the outsider whom it would have been desirable to join ... As Rule 19(a) expresses it, the court must consider the extent to which the judgment may 'as a practical matter impair or impede his ability to protect' his interest in the subject matter.... Fourth, there remains the interest of the courts and the public in complete, consistent and efficient settlement of controversies.

> 390 U.S. at 109–11, 88 S.Ct. at 737–39.

"The language of Rule 19(b) leaves the district court with substantial discretion in considering which factors to weigh and how heavily to emphasize certain considerations." *Envirotech Corp. v. Bethlehem Steel Corp.,* 729 F.2d 70, 75 (2d Cir.1984) (citing 7 Charles A. Wright and Arthur R. Miller, Fed.Pract. and Proc. § 1604 at 45–46 (1972)).

We begin by analyzing the first and most important factor in the indispensability analysis—the extent to which a judgment rendered in the Company's absence might result in prejudice to the Company or any of those already parties. A cursory reading of the Complaint demonstrates that the interests of the Company, as distinct from those of its members, are significantly impacted by Plaintiffs' claims. For example, Plaintiffs allege that Defendants have "engaged in acts to undermine and destroy the business *of the Company* ...". Compl. ¶ 23 (emphasis added). While Plaintiffs allege that these acts were done for purposes of "[causing] plaintiffs to default on their promissory notes ...", Compl. ¶ 23, the harm alleged is nevertheless principally to the Company [5] and only indirectly to the Plaintiffs. If any picketing or boycott activity engaged in by Defendants in front of the Southampton retail store negatively impacted upon the business, as Plaintiffs allege, the harm is to the Company as owner of the store.

---

5. See Compl. ¶¶ 23(a)–(o). For example, ¶ 23(b) alleges that the picketers urged a boycott of the Southampton retail store, which belongs to the *Company;* Paragraph 23(e) alleges misappropriation and misapplication of *Company* funds; Paragraph 23(m) alleges that King provided the *Company*'s Virginia facility with incorrect recipes.

**130**

Plaintiffs' own language supports this point as they allege, "The . . . acts by the defendants have caused, and continue to cause, a decline in the *Company's* revenues, an increase in its expenses and have prevented and continue to prevent the *Company* from selling its Southampton store or otherwise raising money for use in its operations." Compl. ¶ 25 (emphasis added). Plaintiffs further demonstrate the vicarious nature of their claims by alleging that as a result of Defendants' action, "the value of their Units . . . has been, and continues to be, diminished." Compl. ¶ 26. Plaintiffs have no property interest in the assets of the company, but only a right to share in its profits.[6] If the Company's assets are threatened by the Additional Defendants' picketing, only the Company has standing to challenge such a threat. Because the protection of the Company's interests lie at the core of this action and, as stated above, none of the parties before the Court can adequately represent the Company's interests, the Company would be prejudiced if this action were to proceed without joinder. *See, e.g., Smith v. Bader,* 458 F.Supp. 1184, 1187 (S.D.N.Y.1978) (finding limited partnership indispensable where its interests were not adequately represented by presence of partners since "both the plaintiffs and defendants are necessarily primarily concerned with protecting their own interests, which may not, in all instances, coincide with those of the Partnership").

Additionally, Defendants may also suffer prejudice as a result of the failure to join the Company because the Company may bring a separate suit against Defendants on many of the same claims presented here, thus subjecting them to multiple potentially inconsistent verdicts. *See, e.g., Smith v. Kessner,* 183 F.R.D. 373, 376 (S.D.N.Y.1998) (finding limited partnership indispensable where "defendants face a substantial risk of incurring multiple obligations on the same claim").

Finally, Plaintiffs still have an adequate remedy if we dismissed this action. As noted above, there is a pending state court action addressing many of the same issues involved here. *See, e.g., Greater Miami Baseball Club Limited Partnership v. Selig,* 171 F.R.D. 73, 78 (S.D.N.Y.1997) (finding party indispensable where a related action in which such party could be joined was filed in state court). Any claims or parties not currently present in the state court action may be added or named by counter-claim or joinder. *See, e.g., Smith v. Kessner,* 183 F.R.D. at 376 (finding limited partnership indispensable where plaintiff was able to join all parties in federal action as parties in state action). Litigation in this court of matters that are currently being litigated, or may be litigated, in state court is not in furtherance of the "complete, consistent, and efficient settlement of controversies." *Envirotech,* 729 F.2d at 73. Indeed, the state court is the only forum in which adequate relief can be afforded among all the parties in a single action.

We therefore find that the Company is an indispensable party and that the Court cannot resolve the claims before it in 'equity and good conscience' without the joinder of the Company. Fed.R.Civ.P 19(b).

*Derivative Action*

Defendants have suggested an alternative basis for finding that the Company is an indispensable party. They argue that were this action classified as a derivative claim on behalf of the Company, the Company would be required to be joined as an indispensable party. Several legal and factual steps are required to arrive at such a conclusion.

The first question is whether, under New York Limited Liability Company law, a member of an LLC may sue derivatively on behalf of the LLC.

---

6. See NYLLCL § 601 ("A membership interest in the limited liability company is personal property. A member has no interest in specific property of the limited liability company.")

The LLC is considered a "cross-breeding of the corporate form and the partnership form". NYLLCL, Practice Commentaries, 1(A). As noted earlier, the LLC shares the feature of limited liability protection for its members with the corporate form.[7] LLCs are similar to the partnership form, however, in that they provide members with a greater degree of operating flexibility than do corporations; members of an LLC are free to directly manage the business, while corporations are managed by their directors. The LLC, in short, borrows features from both the corporate and partnership forms and members of an LLC have been analogized to corporate shareholders and limited partners. Under both frameworks, shareholders or limited partners are permitted by statute to bring a suit derivatively on behalf of the corporation or partnership.[8]

Given such uniformity, it seems peculiar that in drafting New York's Limited Liability Company Law, the New York State legislature chose not to include a provision expressly permitting derivative lawsuits by members of an LLC on behalf of the LLC. This conundrum is addressed by the Practice Commentaries which state:

"In the initial draft [Article IX] had covered the rights of members to institute derivative actions. Because some legislators raised questions as to the derivative rights provisions, to avoid jeopardizing passage of the Law, Article IX was excised.... The battle to include derivative rights in the LLCL may be fought at some future date."

See Practice Commentaries to NYLLCL, (1)(F).

We do not believe that the legislature's failure to include a derivative action provision in the LLCL prevents us from recognizing such a right at common law. *See, e.g.,* J. William Callison & Maureen A. Sullivan, *Limited Liability Companies: A State by State Guide to Law and Practice* at § 4.7 (West 1994) ("courts may recognize a common law right for members [of LLCs] to sue derivatively"). Indeed, in *Klebanow v. New York Produce Exchange,* 344 F.2d 294 (2d Cir.1965), the Second Circuit recognized a right of limited partners to sue derivatively on behalf of a partnership prior to the passage of Section 115–a of the New York Partnership Law which provides limited partners the statutory right to sue derivatively on behalf of the partnership. See note 6 *supra.* In deciding to grant limited partners the right to sue on behalf of the partnership, the court relied heavily on an analogy of limited partners to corporate shareholders, finding that limited partners share key traits with corporate shareholders, including: an expectation of a "share of the profits" and "[immunity from] personal liability for partnership debts save for [their] original investment ..." *Klebanow,* 344 F.2d at 297. Additionally, a limited part-

**7.** Limited partners in a limited partnership are also afforded limited liability protection, although they may subject themselves to liability if they actively participate in management of the business. New York Partnership Law § 96.

**8.** See New York Business Corporation Law (N.Y.BCL) § 626 ("An action may be brought in the right of a domestic or foreign corporation to procure a judgment in its favor, by a holder of shares or of voting trust certificates of the corporation or of a beneficial interest in such shares or certificates.") The shareholder must be a holder of shares at the time he brings the action, must have been a holder at the time of the transaction complained of and he must set forth the efforts he made to se-

cure the initiation of an action by the board or explain why he has not made such efforts. NYBCL § 626(b)-(c). See also N.Y. Partnership Law § 115–a(1) ("An action may be brought in the right of a limited partnership to procure a judgment in its favor, by a limited partner, additional limited partner, additional limited partner, or substituted limited partner.") The limited partner must satisfy similar prerequisites. He must be a limited partner at the time he brings the action, must have been a limited partner at the time of the transaction complained of and he must set forth the efforts he made to secure the initiation of an action by the general partners or explain why he has not made such efforts. NY Partnership Law § 115–a(2), (3).

ner is like a shareholder in that he is "not thought to be an 'owner' of partnership property ..." *Klebanow,* 344 F.2d at 297. As we noted above, these traits also describe members of an LLC.[9]

We therefore find, on the facts of this case, that Plaintiffs may commence a suit on behalf of the Company.

Having determined that Plaintiffs *may* commence a derivative action on behalf of the Company, we must now determine whether at least some of the claims asserted here are appropriately characterized as derivative.[10] In order to distinguish between direct and derivative claims, courts examine the source of the claim of right:

> If the right flows from the breach of a duty owed by the defendants to the corporation, the harm to the investor flows through the corporation, and a suit brought by the shareholder to redress the harm is one "derivative" of the right retained by the corporation. If the right flows from the breach of a duty owed directly to the plaintiff independent of the plaintiff's status as a shareholder, investor, or creditor of the corporation, the suit is direct.

*Branch v. Ernst & Young,* No. 93–10024, 1995 WL 791941 at *4 (D.Mass. Dec.22, 1995).

Courts also look at whether the injury resulting from the alleged wrongdoing is to the business entity or to the party bringing suit. If the injury does not exist independently of the business entity, but rather is more accurately characterized as harm to the entity itself, and is similar to that suffered by other shareholders, then the action is derivative. *See, e.g., Kramer v. Western Pacific Industries, Inc.,* 546 A.2d 348, 353 (Del.1988) (finding that mismanagement resulting in corporate waste represents a direct wrong to the corpora-

tion that is indirectly experienced by all shareholders and is therefore derivative in nature). If the wrong involves a contractual right of a shareholder which exists independent of any right of the corporation, such as the right to vote, then it is more aptly characterized as direct. *See, e.g., Moran v. Household Int'l, Inc.,* 490 A.2d 1059 (Del.Ch.1985) (stating standard for direct claim but finding that allegation that directors manipulated corporate machinery must be brought derivatively).

As applied to the facts before us, if the primary injury is to the Company a direct cause of action belongs to the Company, even though all members of the Company may be injured by a diminution in value of their interests. In such a situation, a member cannot proceed individually to assert the Company's claim but must proceed by derivative suit. *See, e.g., Alpert v. Haimes,* 64 Misc.2d 608, 315 N.Y.S.2d 332 (N.Y.Supp.1970) (stating that the cited criteria applies in the corporation and limited partnership contexts).

In our discussion of Rule 19(b) above, we found that many of Plaintiffs' allegations in the Complaint are more appropriately characterized as claims of the Company. As the most striking example, Plaintiffs seek to enjoin the Additional Defendants from picketing in front of the Southampton store because the picketing has allegedly caused a decrease in the profits of the Company. Clearly, Plaintiffs' interest in sustaining the Company's profits is based solely on their two-thirds stake in the Company. This is a classic example of an "injury that would not exist independent of the business entity." Because Plaintiffs seek merely to stand in the shoes of the Company in asserting claims against Defendants, their claims are appropriately deemed derivative.

9. See, e.g., NYLLCL § 601, 609 and NYLLCL Practice Commentaries 1(A), 1(C), 5(A) and 5(D).

10. In making such a determination, we examine the nature of the wrongs alleged in the complaint, and not at the Plaintiffs' stated intention and characterization of their claims. *See, e.g., Lipton v. News Int'l Plc.,* 514 A.2d 1075, 1078 (Del.1986).

Despite the differences between the corporate and partnership forms, courts have held that under both frameworks, the entity on whose behalf a derivative lawsuit is brought is deemed an indispensable party. *See, e.g., Ross v. Bernhard,* 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970) (stating that in the case of a derivative suit, "[t]he claim pressed by the stockholder against directors or third parties is not his own but the corporation's" and that in such a case, the corporation is a necessary party without which the case cannot proceed) (citing *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 522, 67 S.Ct. 828, 831, 91 L.Ed. 1067 (1947)); *Carruthers v. Jack Waite Mining Co.,* 306 N.Y. 136, 140, 116 N.E.2d 286, 288 (1953) ("an existing corporation is an indispensable party to a stockholder's derivative action."); *Blasberg v. Oxbow Power Corporation,* 934 F.Supp. 21, 23 ("In a derivative action the party on whose behalf a suit is brought ... is indispensable."); *Smith v. Bader,* 458 F.Supp. at 1187 ("[t]he Partnership is an indispensable party to this action for reasons analogous to a corporation being an indispensable party in a shareholders' derivative action") (citing *Ross,* 396 U.S. 531, 90 S.Ct. 733); *Buckley v. Control Data Corp.,* 923 F.2d 96, 98 (8th Cir.1991) (noting that "[i]t is well established that an entity on whose behalf a derivative claim is asserted is a necessary defendant in the derivative action") (citing 3B Moore's Fed.Pract. ¶ 23.1.21[1] at 23.1-100 (1987) (the corporation in a derivative suit "must be made a defendant since it is indispensable")).

Given that the LLC is a hybrid of the corporation and partnership forms, we see no reason the holdings in the above cases should not apply in the LLC context. We thus hold that because Plaintiffs bring these claims derivatively on behalf of the Company, the Company is an indispensable party and the inability to join it as a party requires the dismissal of this action.

## CONCLUSION

For the reasons stated above, Defendants motion to dismiss this action for failure to join an indispensable party is GRANTED. The Clerk is directed to enter judgment against the Plaintiff and in favor of the Defendants dismissing the Complaint.

SO ORDERED.