**AT THE AIRPORT, separately and in its capacity as a member of Isata, LLC a New York Limited Liability Company, Plaintiff,**

v.

**ISATA, LLC, International Shoppes, Inc., International Shoppes, LLC, Michael Halpern, individually, as a Manager of Isata, LLC, and as President of International Shoppes, Inc., Stephen R. Greenbaum, individually and as a Manager of Isata, LLC, Egbert Morales, and Annette Ballu, Defendants.**

**No. 05 CV 3544(ADS)(WDW).**

United States District Court, E.D. New York.

July 5, 2006.

Rivkin Radler LLP, by Pia Elena Riverso, Esq., of Counsel, Uniondale, NY, for the Plaintiff.

Bracken, Margolin & Gouvis, LLP, by Linda U. Margolin, Esq., of Counsel, Islandia, NY, for the Defendants.

### *MEMORANDUM OF DECISION AND ORDER*

SPATT, District Judge.

This case arises out of claims by At the Airport, "separately and in its capacity as a member of ISATA, LLC" ("ATA" or the "plaintiff"), that Isata, LLC ("ISATA"), International Shoppes, Inc. ("ISI"), International Shoppes, LLC ("ISLLC"), Michael Halpern ("Halpern"), Stephen R. Greenbaum ("Greenbaum"), Egbert Morales ("Morales"), and Annette Ballu ("Ballu") (collectively, the "defendants") created and operated a scheme under which they diverted, for their personal benefit, the assets of ISATA in violation of, among other laws, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO").

Presently before the Court is the defendants' motion to dismiss the complaint for failure to state a claim pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.").

### I. BACKGROUND

The following facts are derived from the complaint and the exhibits annexed to the complaint, and are taken as true for the purpose of this motion.

#### A. The Parties

#### 1. At the Airport, LLC

ATA is limited liability company formed under the laws of the State of New York, with its principal place of business located in East Rockaway, New York. Nonparty Anthony Petrucci is a founding member of ATA. In or about 1995, Petrucci and certain unidentified family members formed ATA for the specific purpose of participating in a joint venture that would operate "duty-free" shops at John F. Kennedy International Airport ("JFK") in Queens, New York.

#### 2. The Defendants

#### a. Halpern, Greenbaum, and the International Shoppes Defendants

International Shoppes, Inc. is a corporation organized under the laws of the State of New York with its principal place of business located in Valley Stream, New York. ISI owns and operates duty-free gift shops, including shops located at JFK. The

business of ISI also includes the import and export of duty-free merchandise for sale. Halpern is the president of ISI. Greenbaum is the chief executive officer ("CEO") of ISI.

International Shoppes, LLC is a New York limited liability company with its principal place of business located in Valley Stream, New York. In or about 1995, Halpern, Greenbaum, and other unidentified non-parties formed ISLLC for the purpose of participating in the JFK duty-free shop joint venture with ATA. Halpern and Greenbaum are members and managers of ISLLC.

### b. ISATA, LLC

ISATA is a New York limited liability company with its principal place of business located in Valley Stream, New York. On or about February 26, 1996, ATA and ISLLC formed ISATA for the purpose of operating duty-free shops and concessions at JFK. ATA owns a twenty-percent share of ISATA. ISLLC owns the remaining eighty percent share of ISATA.

### c. Morales and Ballu

Morales is employed by ISI as a "controller." According to the complaint, the controller's responsibilities include supervision of all accounting functions, including preparation of financial statements, allocation of expenses pursuant to the agreements between the parties, the determination of expenses and income, and payment of invoices. Ballu is employed by ISI as a bookkeeper and assistant to Morales.

### B. The Formation of ISATA

In 1995, Halpern, Greenberg and a non-party named Fred Rosenberg approached Petrucci seeking his assistance in obtaining a lease from the Port Authority of New York and New Jersey (the "Port Authority") to operate a retail dutyfree shop at JFK. Petrucci agreed, and formed ATA in order to participate in the venture. Halpern, Greenbaum, and others formed ISLLC for the same purpose.

At an unspecified later date, the Port Authority awarded ATA and ISLLC the right to operate a business relating to the duty-free liquor, tobacco and confectionary shops at JFK commencing March 1, 1996.

At another unspecified date, the Port Authority entered into a lease with ISI regarding the use of retail space at JFK. The connection between the Port Authority's grant of this lease to ISI and the ATA/ISLLC venture is not readily apparent to the Court. ISI is not a member of ATA or ISLLC, and had apparently already been operating its business at JFK at the time this lease was issued. However, the plaintiff believes this lease was later assigned to ISATA.

On or about February 26, 1996, ATA and ISLLC formed ISATA for the purpose of operating the duty-free shops and concessions at JFK. ATA and ISLLC are the only members of ISATA. As noted above, ATA is a twenty-percent member. ISLLC is an eighty-percent member.

On or about February 29, 1996, ATA and ISLLC executed an operating agreement that set forth the terms under which ISATA would be managed (the "Operating Agreement").

### C. The ISI/ISATA Joint Venture

### 1. The Letter Agreement

On February 28, 1996, Halpern, on behalf of ISI, wrote to Petrucci proposing a joint venture regarding ISATA's operation of duty-free shops at JFK (the "Letter Agreement"). According to Halpern, entities wishing to manage or operate a duty-free shop at JFK must first secure a bond from the United States Customs Service

(the "customs bond") and the separate approval the United States Bureau of Alcohol, Tobacco, and Firearms ("ATF"). In this case, the entity that required a new customs bond and ATF approval was ISATA, whom ATA and ISLLC created to operate the duty-free business.

In the Letter Agreement, Halpern stated his understanding that the Customs and ATF approval process can be lengthy, and expressed concern that ATA and ISLLC would not obtain the proper approvals for ISATA in time to meet their projected March 1, 1996 start-up date. At the time the Letter Agreement was drafted, ISI was already operating duty-free shops and, thus, had the required approvals. Therefore, Halpern proposed to have ISI extend its approvals and customs bond to cover ISATA, and to act as an agent of ATA and ISLLC in operating ISATA's business until the time that Customs and the ATF cleared ISATA to operate on its own.

According to the terms of Letter Agreement, ISI agreed to administer the operations of the duty-free shop "utilizing the concepts" outlined in (1) the ISATA Operating Agreement; (2) an as yet unexecuted Expense Reimbursement Agreement between ISI and ISATA, discussed below; and (3) ISATA's employment agreements. Petrucci agreed to the terms of the Letter Agreement, as evidenced by his signature on the document. The Letter Agreement was not signed by a representative of ISLLC.

### 2. The Expense Reimbursement Agreement

On or about February 29, 1996, ISATA and ISI entered into an agreement entitled "Expense Reimbursement Agreement" (the "ERA"). The ERA provided the terms and conditions of the relationship between ISATA and ISI during the period of time ISI was to control the ISATA shop. Specifically, the ERA detailed the services that ISI would provide for ISATA; the basis for the charges to ISATA from ISI for these services; and a formula with which to calculate ISI's reimbursement for expenses. According to the complaint, it was the intention of the parties that the ERA and, therefore, ISI's control of the ISATA shop would terminate when ISATA obtained its customs bond and ATF approval.

### D. The Plaintiff's Claims

The plaintiff alleges that ISATA did not receive its customs bond and approvals until approximately November, 2000, nearly four years after it began operations at JFK. The gravamen of the plaintiff's claims is that Halpern, Greenbaum, and ISI deliberately delayed in obtaining a customs bond and ATF approval for ISATA so that ISI would remain in control of ISATA's operations under the 1996 Letter Agreement and the ERA. The plaintiff claims that during the four years that ISI remained in control of ISATA the defendants manipulated ISATA's expenses for their own benefit; and fraudulently diverted ISATA's assets to themselves, family members, and to other business entities that they controlled. The plaintiff complains that this alleged conduct deprived ATA of its proper share of ISATA's revenue.

The plaintiff also claims that Halpern, Greenbaum, ISI, Morales, and Ballu violated Sections 1962(b) and (d) of the RICO statute. The plaintiff also asserts the following New York State law causes of action: (1) breach of the 1996 Letter Agreement; (2) breach of the Operation Agreement; (3) breach of the ERA; (4) conversion; (5) conspiracy to commit conversion; (6) unjust enrichment; (7) breach of fiduciary duty; (8) fraudulent conveyance; (9) constructive trust; (10)

conspiracy to defraud; (11) a request for an accounting and the appointment of a receiver; (12) fraud; and (13) a request for a preliminary and permanent injunction. Presently before the Court is the defendants' motion to dismiss the complaint pursuant to Rules 12(b)(6) and 9(b).

## II. DISCUSSION

### A. Legal Standards

#### 1. Rule 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), a district court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir.1999). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Dangler v. N.Y. City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir.1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *King v. Simpson*, 189 F.3d 284, 287 (2d Cir.1999) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995)).

In addition to the forgoing standard governing Rule 12(b)(6) motions, the Court must be mindful of the relevant rules of pleading. In general, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and "[a]ll pleadings shall be so construed as to do substantial justice." Fed.R.Civ.P. 8(f). At the pleading stage, all that is required is that the allegations in the complaint " 'give

the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (quoting *Conley*, 355 U.S. at 47, 78 S.Ct. 99, 2 L.Ed.2d 80).

#### 2. Rule 9(b)

Rule 9(b) sets forth additional pleading requirements with respect to allegations of fraud. The reason for these requirements are three-fold: (1) to provide the defendants with fair notice of the claims against them; (2) to protect the defendants from harm to their reputation or goodwill as a result of unfounded allegations of fraud; and (3) to reduce the number of strike suits. *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987). "[C]onclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir.1982).

Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake [must] be stated with particularity." Fed. R.Civ.P. 9(b). In order to satisfy this requirement, the complaint must: " '(1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent.' " *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993)). As such, this requires the plaintiff to identify which defendant caused each allegedly fraudulent statement to be spoken, written, wired or mailed, and to whom the communication was made; when the communication was made; and how it advanced the fraudulent scheme.

*McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir.1992).

■ However, "[i]n cases in which the plaintiff claims that mail and wire fraud were in furtherance of a larger scheme to defraud, the communications themselves need not have contained false or misleading information." *Calabrese v. CSC Holdings, Inc.,* 283 F.Supp.2d 797, 808 (E.D.N.Y.2003). Under these circumstances, Rule 9(b) "only requires the plaintiff to delineate, with adequate particularity, the specific circumstances constituting the overall fraudulent scheme." *Id.* (citations omitted); *see also In re Sumitomo Copper Litig.,* 104 F.Supp.2d. 314, 319 (S.D.N.Y.2000) (quoting *In re Sumitomo,* 995 F.Supp. 451, 456 (S.D.N.Y.1998)).

■ Where there are multiple defendants, Rule 9(b) requires that the plaintiff allege facts specifying each defendant's contribution to the fraud. *See DiVittorio,* 822 F.2d at 1247 ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."). However, "it is not necessary to allege . . . that the defendants have personally used the mails or wires; it is sufficient that a defendant 'causes' the use of the mails or wires." *Jerome M. Sobel & Co. v. Fleck,* No. 03 Civ. 1041, 2003 WL 22839799, at *6 (S.D.N.Y. Dec. 1, 2003) (citing 18 U.S.C. §§ 1341, 1343).

### B. Civil RICO

Section 1964(c) of the RICO statute creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964. Because "[c]ivil RICO is an unusually potent weapon[,] 'courts should strive to flush out frivolous RICO allegations at an early stage in the litigation.' " *Katzman v. Victoria's Secret,* 167 F.R.D. 649, 655 (S.D.N.Y.1996). Here, the plaintiff asserts two separate causes of action under RICO pursuant to 18 U.S.C. § 1962(c), and two separate causes of action for conspiracy to violate RICO pursuant to 18 U.S.C. § 1962(d). The defendants challenge the plaintiff's standing to assert these claims and the sufficiency of the plaintiff's substantive allegations.

### 1. As to the Plaintiff's Standing Under RICO

■ To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute; (2) an injury to its business or property; and (3) that the injury was caused by the violation of the RICO statute. *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 120–24 (2d Cir.2003); *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.,* 101 F.3d 900, 904 (2d Cir.1996) (citing *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 767 (2d Cir.1994)). The defendants do not challenge the plaintiff's allegations with regard to the first two elements. The third element is satisfied if "the defendant's injurious conduct is both the factual and the proximate cause of the injury alleged." *Baisch v. Gallina,* 346 F.3d 366, 372 (2d Cir.2003) (citing *Lerner,* 318 F.3d at 120).

### 2. Proximate Cause

■ The Second Circuit employs a two-prong test in determining the existence of proximate cause. First, the plaintiff's injury must result from the defendants' racketeering activity or commission of the RICO predicate acts. *See Baisch,* 346 F.3d at 373. "[A] plaintiff does not have standing [under RICO] if he suffered an injury that was indirectly (and hence not proximately) caused by the racketeering activity." *Id.* (citing *Lerner,* 318 F.3d at 122–23). In *Lerner,* the plaintiff failed to satisfy this first element because its inju-

ries "were proximately caused not by the racketeering activity itself, but by the defendant's violation of state reporting requirements, which were not RICO predicate acts." *Id.*

The plaintiff alleges as RICO predicates that the defendants committed acts of mail fraud and wire fraud in order to divert the funds and resources of ISATA for their personal benefit and for the benefit of their family members and other entities within their control. The defendants do not dispute that the plaintiff's alleged loss of its share of ISATA's revenue was caused by the commission of these predicate acts.

Under the second prong, the Court must determine "whether the defendants' acts were 'a substantial factor in the sequence of responsible causation,' and whether the plaintiff's injury was 'reasonably foreseeable or anticipated as a natural consequence.'" *See Baisch,* 346 F.3d at 373–74 (citing *Lerner,* 318 F.3d at 123). A plaintiff will fail to satisfy this aspect of the *Lerner* analysis if its injury, even though caused in fact by the racketeering activity or the commission of RICO predicates, was only an indirect result of such activity.

This second requirement generally prevents a party, such as a shareholder in a corporation or a member of a limited partnership, from asserting a RICO cause of action in his or her individual capacity based on claims of injury suffered by a third-party in which he or she has a financial interest. *See, e.g., Manson,* 11 F.3d at 1130–31 (holding that shareholders and creditors "generally do not have standing under RICO [because the] injury is derivative of that of the corporation and is not caused proximately by the RICO violations") (citation omitted); *Toto v. McMahan, Brafman, Morgan & Co.,* No. 93 CIV. 5894(JFK), 1997 WL 458764, at *4 (S.D.N.Y. Aug.11, 1997) ("This rule barring

recovery under RICO for indirect injury extends to limited partners as well as corporate shareholders."); *Attick v. Valeria Assocs., L.P.,* 835 F.Supp. 103, 110–11 (S.D.N.Y.1992) (holding that a limited partner does not have standing to assert RICO claims if the only injury suffered was diminution of value of his investment in the limited partnership). As stated by the Second Circuit in *Manson v. Stacescu:*

> [a] shareholder generally does not have standing to bring an individual action under RICO to redress injuries to the corporation in which he owns stock.... Since the shareholder's injury, like that of the creditor, generally is derivative of the injury to the corporation, the shareholder's injury is not related directly to the defendant's injurious conduct.

11 F.3d at 1131 (citing *Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 268–69, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992)); *see also Bingham v. Zolt,* 66 F.3d 553, 561 (2d Cir.1995) ("[T]he general principle [is] that a shareholder cannot sue in his individual capacity to redress wrongs inflicted upon a corporation in which he holds stock."). This rule merely recognizes and incorporates a standing requirement applicable throughout corporate law. *Ceribelli v. Elghanayan,* 990 F.2d 62, 63 (2d Cir.1993) (citing *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1101 (2d Cir. 1988)); *Manson,* 11 F.3d at 1132 (discussing the policy reasons "for limiting standing under RICO to plaintiffs whose injuries are personal and directly caused by the RICO violations, particularly when the primary victim of the RICO conspiracy is a corporation"); *see also Lakonia Mgmt. Ltd. v. Meriwether,* 106 F.Supp.2d 540, 550 (S.D.N.Y.2000) (recognizing that the "well-settled principle of corporate law that '[a]n action to redress injuries to a corporation ... must be brought in the name of the

corporation through a derivative action' .... applies with equal force to civil RICO claims.") (quoting *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1101 (2d Cir. 1988)).

■ In this case, the plaintiff's alleged injury is the "loss of its share of the actual revenue of ISATA." This is insufficient to establish the proximate cause necessary to maintain a RICO cause of action. ATA was injured by ISATA's loss caused by the defendants' alleged mismanagement and misappropriation. ISATA is the primary injured party. Derivative of ISATA's injury is the injury to the plaintiff in its inability to collect revenue and, more broadly, the diminution in the value of its investment in ISATA. *See Lakonia Mgmt. Ltd. v. Meriwether*, 106 F.Supp.2d 540, 551 (S.D.N.Y.2000) ("A decrease in value of a holder's shares which 'merely reflects the decrease in value of the firm as a result of the alleged illegal conduct is derivation rather than direct in nature and cannot confer individual standing under RICO.") (citation omitted); *Paris Partners, L.P. v. Russo*, No. 94 Civ. 5684(PKL), 1995 WL 746585, at *2 (S.D.N.Y. Dec.14, 1995) ("[The] plaintiff's injury is derived from the devaluation of its investment in RCA[.] ... Plaintiff's attempts to cast [these] injuries as direct and distinct from those suffered by RCA border on the frivolous."). Under these circumstances, the general rule against indirect standing should militate that this action be dismissed in favor of an action brought derivatively on behalf of ISATA.

Notwithstanding the derivative nature of ATA's injury, the plaintiff advances two arguments as to why it should nonetheless be permitted to assert individual RICO claims in this case. First, the plaintiff argues that the general rule denying shareholders, partners, and creditors derivative standing to assert individual RICO should not be applied to a member of a New York LLC. In the alternative, the plaintiff argues in favor of the application of the "special duty exception" to the general rule against derivative standing.

### 3. As to the Plaintiff's Status as a Member of an LLC

The general rule prohibiting derivative standing is based on the premise that because the injury was caused to the organization, the claim thus belongs to that entity, and any lawsuit seeking redress of that injury must be commenced by or derivatively on behalf of the organization. *See, e.g., Lakonia Mgmt., Ltd. v. Meriwether*, 106 F.Supp.2d 540, 551 (S.D.N.Y.2000) ("Unless the injury sustained by a shareholder "is separate and distinct from that sustained by other shareholders," the claim asserted is derivative and must be brought by or on behalf of the corporation."); *Wolf v. Rand*, 258 A.D.2d 401, 403, 685 N.Y.S.2d 708, 710 (1st Dep't 1999) ("Even where the corporation is closely held, and the defendants might share in the award, the claims belong to the corporation, and damages are awarded to the corporation rather than directly to the derivative plaintiff."). This is true even where the other shareholders are alleged to have participated in the misconduct. *See Manson*, 11 F.3d at 1131–32.

The plaintiff argues that this rule should not apply in this case because, as a member of an LLC, the plaintiff is not permitted by the New York Limited Liability Company Law to bring a derivative action on behalf of the company. Unlike the New York laws authorizing the creation of other business organizations, the New York LLC law does not expressly authorize derivative lawsuits. *See* N.Y. Ltd. Liab. Co. Law §§ 101–1403; *see also Hoffman v. Unterberg*, 9 A.D.3d 386, 388–89, 780 N.Y.S.2d 617, 620 (2d Dep't 2004)

("[T]he plaintiff, an alleged owner/member of a limited liability company, does not have the right to bring a derivative action on behalf of the company."); *cf.* N.Y. Bus. Corp. Law § 626 (providing statutory right to bring derivative action); N.Y. P'ship Law §§ 115–115a (same). *But see Weber v. King,* 110 F.Supp.2d 124, 131–32 (E.D.N.Y.2000) (recognizing an implied right of members of a New York LLC to sue derivatively).

The Court recognizes the difficulty of the plaintiff's position. On one hand, the derivative nature of the plaintiff's injury would generally prevent it from alleging individual claims based on those injuries. On the other hand, New York law does not expressly provide the mechanism traditionally relied upon by parties seeking to enforce the rights of an organization. Indeed, it can be fairly argued that the rule against derivative injury claims presumes that the directly injured third party will have the ability to vindicate its claims. *See Anza v. Ideal Steel Supply Corp.,* —— U.S. ——, ——, 126 S.Ct. 1991, 1998, 164 L.Ed.2d 720, —— (2006) ("The requirement of a direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims."). But to argue that the rule against derivative injury RICO claims should not be applied in the absence of an action for the directly injured party is quite different.

As an initial matter, the Court notes that the law regarding the availability of a derivative action to a member of a New York LLC is not settled. The LLC statute does not expressly provide for such a cause of action. However, at least one federal court has held that such a cause of action can be implied. *See Weber,* 110 F.Supp.2d at 131–32 (holding that the New York legislature's failure to include a de-

rivative action provision in the Limited Liability Company Law does not prevent the Court from recognizing such a right at common law.).

Notwithstanding this apparent dilemma, the question of whether a member of an LLC can sue derivatively is not before the Court. The plaintiff did not commence this lawsuit as a derivative action. Although the title of the case states that ATA is bringing this action "in its capacity as a member of ISATA," none of the causes of action alleged in the complaint are pled derivatively. The plaintiff admits this in its brief. *See* Pl.'s Br. 20 ("[S]hould the Court determine that ATA may bring a derivative suit on behalf of ISATA, ATA seeks leave of the Court to re-plead the Complaint to assert such a claim."). Right now, the Court's task is to determine whether the injury ATA alleges in the complaint is sufficient to confer standing to it under the RICO statute. It is not. The RICO statute requires injury that is "direct." ATA's injury is indirect, and the Court is unwilling to create an exception to the general rule of a RICO cause of action only for the directly injured party. Such an exception would be contrary to well-established precedent involving the RICO statute and also long-standing principles of corporate law. *See Ceribelli,* 990 F.2d at 63 (citing *Bankers Trust Co.,* 859 F.2d at 1101).

**4. As to the Special Duty Exception**

■ In *Ceribelli v. Elghanayan,* the Second Circuit recognized a "special duty exception" to the general rule prohibiting shareholder standing in the context of RICO actions. *See* 990 F.2d 62, 63–65 (2d Cir.1993); *Manson,* 11 F.3d at 1131–32. In order to invoke this exception, the plaintiff must allege that its injury arose from the breach of a duty that is distinguishable from the duty owed to the corpo-

ration and the other shareholders. *Manson*, 11 F.3d at 1131–32. Plaintiffs have successfully invoked the special duty exception in situations "where a shareholder was fraudulently induced to become a shareholder in the first place." *Lakonia Mgmt. Ltd.*, 106 F.Supp.2d at 551 n. 21 (citing *Dep't of Econ. Dev. v. Arthur Andersen & Co.*, 924 F.Supp. 449, 464 (S.D.N.Y.1996)); *see also Feinberg v. Katz*, Nos. 99 Civ. 0045(CSH), 01 Civ. 2739(CSH), 2005 WL 2990633, at *2 (S.D.N.Y. Nov. 7, 2005). The plaintiff does not allege that it was fraudulently induced to become a member of ISATA. All of the alleged misconduct took place after ISATA was formed, while ATA already was a member.

In the complaint, the plaintiff alleges that Halpern, Greenbaum, ISI, Morales, and Ballu "owed a fiduciary duty to the plaintiff to conduct the business of ISATA honestly and to engage in fair dealing." However, the plaintiff does not explain how this duty is distinguishable from the duty the defendants owed to ISATA. *See* N.Y. Lim. Liab. Law § 409(a) ("A manager shall perform his or her duties as a manager, . . . in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances.").

The cases relied upon by the plaintiff in making this argument support only the proposition that co-members of an LLC owe fiduciary duties to each other. *See Salm v. Feldstein*, 20 A.D.3d 469, 799 N.Y.S.2d 104 (2d Dep't 2005); *Maillet v. Frontpoint Partners, LLC*, No. 02 Civ. 7865(GBD), 2003 WL 21355218 (S.D.N.Y. June 10, 2003). Here, that rule is undisputed, but does not support the invocation of the special-duty exception.

In sum, the Court finds that ATA does not allege any injury that is distinct from the injury to the other member of ISATA.

Similar to the shareholder-plaintiff in *Manson*, the plaintiff's injury is the same as that of the other member of ISATA. *See* 11 F.3d at 1131–32. This is true even though ISATA's other member, ISLLC, and its managers are alleged to have participate in the wrongdoing. *Id.* Although Halpern and Greenbaum are alleged to have profited from their fraud, they apparently suffered injury identical to the plaintiff in their capacity as owners of a member of ISATA. Both ATA and ISLLC were deprived of their share of revenue of ISATA, and both could be made whole through a derivative action. *See id.* Thus, the special duty exception is not applicable. Accordingly, the defendants' motion to dismiss the plaintiff's RICO causes of action is granted.

### C. Leave to Amend

■ The plaintiff requests that if any of its causes of action are deemed to be insufficient to state a claim that it be permitted to file an amended complaint. Rule 15(a) of the Federal Rules of Civil Procedure states that a party shall be "freely" given leave to replead "when justice so requires." Fed.R.Civ.P. 15(a); *see also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 259 (2d Cir.2002); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991). Leave to amend should be denied only because of undue delay, bad faith, futility, or prejudice to the non-moving party, and the decision to grant or deny a motion to amend rests within the sound discretion of the district court. *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603–04(2d Cir.2005); *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir.1995).

A determination that a proposed claim is futile is made under the same standards that govern a motion to dismiss under Rule 12(b)(6). *Randolph–Rand Corp. of New York v. Tidy Handbags, Inc.*, No. 96

Civ. 1829, 2001 WL 1286989, at *5 (S.D.N.Y. Oct.24, 2001) (An amendment is futile "if the proposed amended complaint would be subject to 'immediate dismissal' for failure to state a claim or on some other ground.") (quoting *Jones v. N.Y. State Div. of Military & Naval Affairs,* 166 F.3d 45, 55 (2d Cir.1999)).

■■■ In the Court's opinion, it would not be futile to allow the plaintiff leave to amend the complaint. As discussed above, the question of whether the plaintiff may sue derivatively on behalf of ISATA is unsettled. *Compare Hoffman v. Unterberg,* 9 A.D.3d 386, 780 N.Y.S.2d 617, 620 (2d Dep't 2004), with *Weber v. King,* 110 F.Supp.2d 124 (E.D.N.Y.2000). On a question of state law such as this, the Court is bound to apply the law as interpreted by New York's intermediate courts unless it were to find persuasive evidence that the New York Court of Appeals would reach a different conclusion. *Pahuta v. Massey–Ferguson, Inc.,* 170 F.3d 125, 134 (2d Cir. 1999). While the plaintiff has asked the Court to follow the decision of the New York State court that has determined that a derivative action is not permitted by a member of an LLC, the Court finds that this issue is not properly before the Court in the context of the defendants' present motion to dismiss. First, the plaintiff did not bring this action derivatively. Second, although the plaintiff advances the alternative argument that it should be permitted to plead a derivative action, this issue is mentioned only briefly with no discussion of the merits of allowing such an action. Nor is there any indication of how the New York Court of Appeals would rule on this matter.

Under these circumstances, the Court will refrain from making a determination regarding the availability of an LLC derivative action without first allowing the parties an opportunity to be fully heard on this issue. Accordingly, the plaintiff will be permitted to file an amended complaint in the form of a derivative action on behalf of ISATA in compliance with the requirements of Fed.R.Civ.P. 23.1.

## D. As to the Plaintiff's State Law Claims

Having dismissed the plaintiff's RICO causes of action, there is no longer any independent basis for federal jurisdiction in this case. Therefore, the Court declines to exercise supplemental jurisdiction over the plaintiff's many state law claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim [if] the district court has dismissed all claims over which it has original jurisdiction."); *Town of West Hartford v. Operation Rescue,* 915 F.2d 92, 104 (2d Cir.1990) ("[I]t is well settled that 'if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.'") (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Accordingly, the plaintiff's causes of action for breach of the 1996 Letter Agreement, breach of the Operation Agreement, breach of the ERA, conversion, conspiracy to commit conversion, unjust enrichment, breach of fiduciary duty, fraudulent conveyance, constructive trust, conspiracy to defraud, for an accounting and the appointment of a receiver, fraud; and for a preliminary and permanent injunction under New York State law are also dismissed without prejudice. *See Martinez v. Simonetti,* 202 F.3d 625, 636 (2d Cir.2000) (directing dismissal of supplemental state law claims where no federal claims remained); *Lakonia Mgmt. Ltd. v. Meriwether,* 106 F.Supp.2d 540, 551 (S.D.N.Y.2000) (same).

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the defendants' motion to dismiss the complaint is GRANTED; and it is further

**ORDERED,** that the complaint is dismissed, without prejudice; and it is further

**ORDERED,** that the plaintiff is granted leave to file an amended complaint within sixty days of the date of this Memorandum of Decision and Order. The plaintiff's failure to file an amended complaint within sixty days of the date of this Order will render the dismissal of the plaintiff's RICO cause of action to be with prejudice.

**SO ORDERED.**